# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
|  | § |  |
| **FOREST PARK MEDICAL CENTER** | § |  |
| **AT FRISCO, LLC** | § | CASE NO. ___15-41684___ - BTR |
|  | § |  |
| **DEBTOR.** | § |  |
|  | § | **HEARING DATE & TIME:** |
|  | § | September 23, 2015 at 1:30 p.m. |

## EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING

TO THE HONORABLE CHIEF JUDGE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

Forest Park Medical Center at Frisco, LLC (the "Debtor") hereby moves (the "Motion") on an emergency basis for entry of an interim order (the "Interim Order," a copy of which is attached hereto as Exhibit "A" and is incorporated herein by reference) and a final order (the "Final Order"): (1) authorizing the Debtor to obtain post-petition financing pursuant to Section 364 of Title 11 of the United States Code (the "Bankruptcy Code") by entering into that certain *Senior Secured Superpriority Debtor-in-Possession Loan and Security Agreement* (the "DIP Agreement"), together with any related loan documents, as the same may be amended, supplemented, or otherwise modified from time to time, and all instruments, agreements, assignments, and other documents referred to therein or herein or requested by the Post-Petition

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 1

4849-0976-7976.1.

Lender to give effect to the terms thereof and hereof (the DIP Agreement and such other instruments, agreements, assignments, and other documents, as at any time amended, substituted, or restated, being collectively called the "DIP Financing Documents");[1] with Sabra Texas Holdings, L.P., as the lender thereto (the "Post-Petition Lender"), all subject to the terms and conditions set forth herein and therein; (2) granting certain liens and super-priority administrative expense status to the Post-Petition Lender (including, as specifically set forth herein and in the DIP Agreement, an administrative priority claim pursuant to Section 364(c)(1) of the Bankruptcy Code, liens pursuant to Sections 364(c)(2) and (3) of the Bankruptcy Code; (3) modifying the automatic stay; and (4) in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and all applicable local bankruptcy rules, scheduling a final hearing (the "Final Hearing") and approving notice with respect thereto. In support of this Motion, the Debtor respectfully states to the Court as follows:

# I.
## BANKRUPTCY RULE 4001 CONCISE STATEMENT

1.      By this Motion, the Debtor requests:

    a.      Entry of a proposed Interim Order in substantially the form attached hereto as Exhibit "A" and a Final Order authorizing the Debtor:

        i.      To obtain post-petition financing pursuant to Sections 363 and 364 of the Bankruptcy Code by entering into the DIP Agreement, substantially in the form attached hereto as Exhibit "B," by and between the Debtor and the Post-Petition Lender;

        ii.     To grant liens and super-priority claims to and on behalf of and for the benefit of the Post-Petition Lender in certain Post-Petition Collateral to secure the DIP Loan; and

---

[1] Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the DIP Agreement.

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 2

4849-0976-7976.1.

      iii.      Pending a final hearing, to and including the date on which the Final Order is entered, to obtain emergency post-petition loans and financing in an amount not to exceed $18,500,000.00.

b.      In accordance with Bankruptcy Rule 4001(c)(2), that this Court schedule the Final Hearing and approve notice with respect thereto.

The material provisions of the proposed debtor-in-possession financing are summarized as follows and set forth in the following sections of the DIP Agreement and/or the Interim Order:

a.      <u>Debtor-in-Possession</u>: Forest Park Medical Center at Frisco, LLC. See DIP Agreement, at Page 1.

b.      <u>DIP Lender or Lender</u>: The Post-Petition Lender (Sabra Texas Holdings, L.P.). See DIP Agreement, at Page 1.

c.      <u>Aggregate Commitment</u>: A maximum amount of up to $18,500,000.00 or such other amount as provided in the DIP Agreement. See DIP Agreement, at Page 2.

d.      <u>Termination Date</u>: the calendar date which is the earliest of: (a) October 23, 2016, or such other date as may be subsequently agreed to in writing between Lender and Debtor; (b) the date of consummation of a Strategic Transaction or (c) an Event of Default.   See DIP Agreement, at Page 8.

e.      <u>Purpose</u>: Borrowings under the DIP Agreement may be used for working capital and general corporate purposes consistent with the Budget, and to pay the costs and expenses related to the administration of Borrower's Bankruptcy Case, including reasonable professional fees and certain other expenses as contemplated in the Budget, and as set forth in the applicable Order, or as consented to by Lender in its sole discretion. See DIP Agreement, at Page 9.

f.      <u>Priority and Liens</u>: All borrowings under the DIP Agreement shall be secured by a lien on and security interest in all assets and property of Borrower and its bankruptcy estate, whether now owned or hereafter acquired (as defined in the DIP Agreement, the "Collateral"), other than avoidance actions under Chapter 5 of the Bankruptcy Code against entities other than Lender. Such liens shall have the following lien priorities:

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 3**

4849-0976-7976.1.

(i)     First priority liens under 11 U.S.C. § 364(c)(2) on all Collateral not presently encumbered by a prior perfected and unavoidable lien held by any other party;

(ii)    Subordinate and junior liens under 11 U.S.C. § 364(c)(3) on all Collateral presently encumbered by a prior perfected and unavoidable lien held by any creditor;

(iii)   First priority, senior priming liens under 11 U.S.C. § 364(d)(1) on all property of the Debtor subject to the Permitted Encumbrances, including those valid and perfected liens of Texas Capital Bank and any *ad valorum* tax; and

(iii)   All of the above-described pledges, security interests and mortgage shall be deemed created and fully perfected and effective on entry of the Interim Order, without the need for any additional documentation.

All borrowings under the DIP Agreement shall also be allowed and treated under 11 U.S.C. § 364(c)(1) as super-priority administrative expenses in the Bankruptcy Case, subject only to the Carve-Out, meaning that no costs or expenses of administration incurred in the bankruptcy and no priority claims will be prior to, superior, or on parity with the Lender's claims against the Debtor or the Debtor's estate. No cost or expense of administration shall be imposed on Lender, its claims, or its collateral under §§ 506(c) or 552.

See DIP Agreement, at Pages 12-14 and 17.

g.  Carve-Out: means (a) allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6), and (b) allowed reasonable fees and expenses of the Case Professionals, as provided in the Budget approved by the Lender incurred prior to a Termination Declaration Date, plus an amount up to $500,000 for such fees and expenses incurred after a Termination Date. See DIP Agreement, at Page 2.

h.  Interest: Interest on the Loans and other DIP Obligations (defined below) shall accrue at the rates provided in the DIP Financing Documents (including any default rates, if applicable) and shall be paid in accordance with and at the times as provided in the DIP Financing Documents. See DIP Agreement, at Page 10.

i.  Events of Default: The Events of Default set forth in Pages 28-32 of the DIP Agreement.

j.  Waiver of Applicable Non-Bankruptcy Law Relating to Perfection: The Interim Order is deemed to be sufficient and conclusive evidence of the priority, perfection,

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 4**

4849-0976-7976.1.

and validity of the post-petition liens and security interests granted therein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the subject collateral, or other act to validate or perfect such security interest or lien. See Interim Order, at Para. 11.

k.  Relief From Automatic Stay: The automatic stay provisions of Section 362 of the Bankruptcy Code are modified and vacated to the extent necessary to enforce certain remedies against the Collateral, without having to obtain any further order of the Bankruptcy Court. See Interim Order, at Para. 14(b).

l.  Application of Proceeds of Collateral: From and after the Effective Date and thereafter during the period of this Interim DIP Facility, the proceeds of the DIP Loan, the Collateral shall not, directly or indirectly, be used to pay expenses of the Debtor or otherwise disbursed except for those expenses and/or disbursements that are expressly permitted under the Budget. Except for the purposes set forth in the first sentence of this Paragraph, the Post-Petition Lender has not consented or agreed to the use of the proceeds of the DIP Loan or the Collateral. See Interim Order, at Para 1(v).

m.  Waiver of Section 506(c) Surcharge: The Debtor shall not assert a claim under Section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the Post-Petition Lender upon the Collateral. See Interim Order, at Para. 8.

## II.
## STATUS OF THE CASE AND JURISDICTION

2.      On the date hereof (the "Petition Date"), the Debtor commenced this case by filing voluntary petitions for relief under Chapter 11 the Bankruptcy Code. The Debtor has continued in the possession of their property and are operating and managing their businesses as Debtor and Debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request for a trustee or examiner has been made and no creditors' committee has yet been appointed in these cases. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 5**

4849-0976-7976.1.

157(b)(2)(A) and (0). Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief sought herein are Sections 105(a), 361, and 364 of the Bankruptcy Code and Bankruptcy Rules 4001, 6004, and 9014.

## III.
## BACKGROUND

### A.      General.

5.      The Debtor is a doctor-owned Texas limited liability company that owns and operates a 54-bed state-of-the-art medical facility, including 30 private rooms, 14 family suites and 10 intensive care rooms (the "Hospital") in Frisco, Texas.  The Hospital is a luxury medical facility located at 5500 Frisco Square Boulevard in Frisco, Texas, off of the Dallas North Tollway and Main Street.  It is currently minimally staffed for an average daily census of 1-3 inpatients per day and up to 200 outpatients per month, but has a fully staffed maximum capacity of 54 inpatients per day and 1,000 outpatients per month. The Debtor's leased facility is comprised of over 136,759 useable square feet and is situated on approximately 4.7 acres. Approximately 159 employees work at the Hospital, including 100 full-time employees and 59 part-time employees.

6.      The Debtor offers a range of surgical services, including, but not limited to, pediatric, bariatric, brain, orthopedic, pain management, plastics and reconstructive, spine and neurosurgery.  The Hospital's back office services and employees are contracted through FPMC Services, LLC ("Shared Services").  Shared Services manages all revenue for the Debtor, as well

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 6**

4849-0976-7976.1.

as six other affiliates and is owned in equal parts by those seven entities for which it performs these services.

### B.    Pre-Petition Secured Lender.

Pre-Petition Financing

7.      On or about October 10, 2012, the Debtor entered into that certain *Loan and Security Agreement,* dated as of October 10, 2012, by and between the Debtor and Texas Capital Bank ("TCB"), as such may have been amended and/or supplemented from time to time (the "Line of Credit Agreement"). The Debtors currently owe approximately $2,500,000.00 under the Line of Credit Agreement, secured by essentially all of the Debtor's assets ("Line of Credit").  The Line of Credit matured on or about December 31, 2014, with an additional extension to March 31, 2015.  Around the time of the December 31, 2014 maturity date, the Debtor learned that TCB would not be renewing the Debtor's Line of Credit nor providing further extensions of credit past its maturity.

8.      In addition, the Debtor is also indebted to TCB under that certain *Master Equipment Lease* dated May 30, 2012 (the "Master Equipment Agreement") for certain of the Debtor's equipment.   The remainder of the equipment is leased through various parties, including General Electric Capital Corporation, Karl Storz, Commerce Bank and Olympus Corporation.  The Debtor's total indebtedness as to TCB as of the Petition Date is approximately $6,000,000.00 secured by the Debtor's assets.

9.      Currently, based upon a trailing three (3) months ending in July 2015, the Debtor generates approximately $3,400,000.00 a month in revenue, and has operational expenses of approximately $4,300,000.00 a month (not including restructuring costs and debt service

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 7**

4849-0976-7976.1.

obligations).  As such, the Debtor does not generate sufficient revenue to operate the Hospital and to service their debt unless the number of patients exceeds recent levels.

<u>Landlord and DIP Financing</u>

10.     The Debtor leases the real property and fixtures in which the Hospital operates, from Sabra Texas Holdings, L.P. ("Sabra") pursuant to the terms of that certain *Lease Agreement* dated December 6, 2010, which was thereafter amended pursuant to that certain *First Amendment to Lease Agreement* dated as of October 22, 2013 (the "Lease") assigning the Lease from FPMC Frisco Realty Partners, LP to Sabra.  The Lease is for an initial term of 20 years, accruing rent in the amount of $842,290.00 per month for the Hospital and the parking structure, to increase every calendar year over the term of the Lease by 3%.

11.     TCB has refused to provide the Debtor with debtor-in-possession financing. However, Sabra has offered the Debtor debtor-in-possession financing in the approximate amount of $18,500,000.00, available in draws and accruing interest at a 5% interest rate, payable monthly in arrears ("DIP Financing") pursuant to that certain Senior Secured Superpriority Debtor-In-Possession Loan and Security Agreement ("DIP Agreement").  The DIP Financing would mature upon the occurrence of certain events, including the conversion of this Case, dismissal of this Case, the sale of substantially all of the Debtor's assets, the revocation of the Debtor's license to operate, or the expiration of thirty-five (35) days after the filing of a Petition if a final order approving the DIP Credit Facility has not been entered by the Bankruptcy Court.

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 8**

4849-0976-7976.1.

12.     Prior to the Petition Date, the Debtor anticipated that without continuing liquidity, the value of their assets would rapidly diminish and would more than likely require the Debtor to close down the Hospital and liquidate their assets.

### C.     Reorganization Efforts.

13.     The Debtor's operations were developed based upon an "out of network" model. This model relied upon higher reimbursement rates as an out of network facility. However, prior to the Petition Date, the Debtor determined that it would be unable to sustain the level of revenue needed to operate by operating solely out of network.  Consequently, it attempted to increase its revenues by entering into network contracts with various insurance providers. Although being "in network" with various insurance providers would result in discounted reimbursement rates, it was thought that being in network would increase the volume of procedures at the Hospital and thus increase revenues.  However, the reduced rates that were contracted for with the insurance providers were too low for the Hospital to schedule enough procedures to reap any financial benefit from the contracts.

14.     The Debtor engaged Juniper Advisory, LLC for assistance to pursue a sale of the Hospital to a purchaser in June 2014.  Despite many possible purchasers performing due diligence and even one offer for purchase, such offer included a purchase of the real estate owned by Sabra and Sabra was unwilling to sell the real estate at the proposed purchase price.

15.     In addition to seeking a potential purchaser, the Debtor's Management Company, Vibrant Healthcare Frisco, LLC, also sought and located a replacement revolving lender who would pay off the TCB Line of Credit and provide up to an additional $6.5 million in additional availability based upon the amount of the Debtor's accounts receivable.  However, this demand

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 9**

4849-0976-7976.1.

note, bearing 15% interest, provided a decreasing amount of liquidity due to the Debtor's declining accounts receivable balance while the Debtor worked to resolve obstacles to closing such as intervening lawsuits, a delay in signing a new management contract and Sabra's impending eviction of the Debtor from its leased space. Ultimately, this financing never closed.

16.     Finally, to address the increasingly exigent financial and operational issues, the Debtor retained Deloitte CRG ("Deloitte") on September 11, 2015. Deloitte was retained to assist the Debtor to, among other things, create short-term budgets, negotiate appropriate waivers and forbearances, and assess the Debtor's available assets and options by which to improve the Debtor.

17.     In Chapter 11, the Debtor has an opportunity to quickly evaluate whether a plan of reorganization or a sale of the Debtor's assets will provide for the most recovery to the Debtor's creditors. This would avoid further deterioration of the Debtor's business, would preserve over one hundred jobs, and would achieve maximum values for all creditors. In order to evaluate the strategies set forth herein, and maximize values for all creditors, including unsecured creditors, the Debtor was forced to commence this Chapter 11 Case.

## IV.
## RELIEF REQUESTED

18.     The Debtor hereby requests entry of the Interim Order, the scheduling of a final hearing, and, after such hearing, the entry of a Final Order granting the following relief, all as more specifically enumerated above in the introductory paragraph of this Motion.

### A.     The Debtor's Need for Financing.

19.     The Debtor requests authority to obtain post-petition financing from the Post-Petition Lender. The requested relief is necessary for the Debtor to continue the operation of its

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 10

4849-0976-7976.1.

business as Debtor-in-Possession, to preserve the going-concern value of its assets, and to minimize the disruption of the Debtor as a going concern. The Debtor will suffer immediate and irreparable harm unless it is immediately authorized to obtain financing in the amount and on the terms and conditions set forth in the Interim Order and in the DIP Financing Documents.

20.     Despite diligent efforts, the Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a super-priority administrative expense claim pursuant to Section 364 of the Bankruptcy Code, and the Debtor has been unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of its estate pursuant to Sections 364 of the Bankruptcy Code.

21.     Subject to the terms and conditions set forth in the Interim Order, the Post-Petition Lender is willing to make advances to the Debtor in the aggregate amount of up to $18,500,000.00 (the "DIP Loan") to allow the Debtor to continue to operate as a going concern.

**B.      Summary of Relief Sought.**

22.     The Debtor seeks authorization to obtain, on an emergency basis, secured, super-priority post-petition financing on terms as outlined in the DIP Agreement substantially in the form attached hereto as Exhibit "B" and incorporated herein by reference. Specifically, the Debtor seeks the entry of interim and final orders authorizing (a) the Debtor to enter into the DIP Agreement, (b) obtain the post-petition financing contemplated therein in one or more advances from the Post-Petition Lender under the DIP Loan, (c) to pay all interest, fees, expenses, and other obligations provided for under the Interim Order and the DIP Financing Documents, and

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 11**

4849-0976-7976.1.

(d) to satisfy all conditions precedent and perform all obligations thereunder in accordance with the terms thereof:

    (a)    A condition to the willingness of the Post-Petition Lender to fund the DIP Loan is that, as security for the prompt payment and performance of the DIP Loan and all interest, fees, expenses, and charges at any time payable by the Debtor under the Interim Order (collectively, the "DIP Obligations"), the Post-Petition Lender receives

    (b)    Pursuant to Section 364(c)(2) of the Bankruptcy Code, a first-priority, perfected lien upon all of the Debtor's right, title, and interest in, to, and under all of the Debtor's assets other than those specified in subparagraphs (c) below; and

    (c)    Pursuant to Sections 364(c)(3) of the Bankruptcy Code, a subordinate and junior perfected lien on all collateral encumbered by a prior-perfected and unavoidable lien held by TCB.

    (d)    Pursuant to Section 364(d)(1) of the Bankruptcy Code, a first-priority, perfected lien on all assets of the Debtor, Debtor-in-Possession, or the estate, owned now or acquired thereafter, that primes and is senior to all other liens and security interests, including replacement liens, subject only to the Permitted Encumbrances.[2]

23.    The liens described in items (b) and (c) above shall hereinafter be referred to as the "Post-Petition Liens."  Notwithstanding the foregoing provisions, the Post-Petition Liens shall not attach to any of the following property: (i) any causes of action, including causes of action or claims pursuant to Sections 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "Avoidance Actions"); and (ii) any monies recovered in connection with the successful

---

[2] Permitted Encumbrances is defined in the Interim Order as (a) liens in favor of Lender created by this the DIP Agreement; (b) perfected and unavoidable liens and security interests held by TCB only in property of the Debtor that existed on the Petition Date, provided that, such liens of TCB are valid, perfected and unavoidable, and senior in priority to Lender's liens and security interests in the Collateral, as such priority determination to be made in accordance with applicable law; and (c) liens securing *ad valorem* taxes assessed against any piece of Collateral and due and owing to the applicable state or local taxing authority who under Texas state law has a first-priority lien.

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 12**

prosecution or settlement of Avoidance Actions or any other causes of action held by the Debtor's estate (collectively, the "Avoidance Proceeds").

24.     Pursuant to the Interim Order, all DIP Obligations will be granted administrative priority in accordance with, and shall constitute an allowed super-priority claim (the "Super-Priority Claim") pursuant to the provisions of Section 364(c), 364(c)(1), and 364(d) of the Bankruptcy Code with priority over all other administrative expenses in the Debtor's consolidated bankruptcy case of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 552, 726, 1114, or other similar section of the Bankruptcy Code.

25.     Further, no costs or administrative expenses which have been or may be incurred in this Chapter 11 case, in any proceedings related hereto or in any superseding Chapter 7 case, and no priority claims are or will be prior to or on a parity with the Super-Priority Claim of the Post-Petition Lender against the Debtor arising under any of the DIP Financing Documents, except for the Carve-Out for professional fees as set forth in the Budget and for fees payable to the U.S. Trustee and to the Clerk of the Court.

26.     The Debtor believes that good cause has been shown for the entry of the Interim Order to obtain the DIP Loan pending a final hearing on the relief requested herein pursuant to Bankruptcy Rules 4001(c) and (d). The Debtor's need for financing of the type requested herein and as afforded by the Interim Order is immediate and critical. Entry of the Interim Order will minimize disruption of the Debtor's hospital operations and business as a going concern, will preserve the assets of the Debtor's estate, and is in the best interests of the Debtor, its creditors, and its estate.

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 13**

4849-0976-7976.1.

27.     The Debtor further believes that the terms of the financing are fair and reasonable, reflect the Debtor's reasonable exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The interests of the Trustee and the other lenders in its pre-petition collateral are adequately protected under the terms and conditions of the Interim Order and the proposed interim cash collateral order.

28.     The DIP Agreement is necessary to maintain the value of the Debtor's assets, including going-concern value, and the ability to continue its business and hospital and healthcare operations and provide medical care to the Frisco and North Texas community. For the foregoing reasons, and in order to assure operating capital, it is necessary for the Debtor to have a post-petition credit facility. Otherwise, the Hospital will need to close.

**V.**
**BASIS FOR RELIEF REQUESTED**

29.     As described above, it is essential to the Debtor's operations that it be granted immediate access to funds. Absent access to the working capital financing that will be available to the Debtor under the proposed DIP Loan on an interim basis, the Debtor will be unable to maintain its business operations, preserve the value of their assets, or adequately care for its patients.

30.     The Debtor believes that the terms and conditions of the DIP Loan, the DIP Financing Documents and the Interim Order, and the related relief requested herein are fair, reasonable, and in the best interests of the Debtor, its estate, and its creditors.

   A.    **Approval Under Section 364 of the Bankruptcy Code.**

31.     Section 364 of the Bankruptcy Code allows the Debtor to (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 14**

4849-0976-7976.1.

business, and (c) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, the Court may authorize the obtaining of credit or the incurring of debt, repayment of which is entitled to super-priority administrative expense status or is secured by a lien on unencumbered property, or a combination of the foregoing.

32.     The Debtor proposes to obtain financing under the DIP Loan, the DIP Financing Documents, the Interim Order, and the Final Order by providing security interests in and liens on the Collateral pursuant to Section 364 of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under Section 364 is a finding, made after notice and hearing, that the Debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992) (the debtor must show "by a good faith effort that credit was not available without" the protections of Section 364(c)). Section 364 financing is appropriate when the trustee or debtor-in-possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. *See In re Crouse Group, Inc.*, 71 B.R. 544, 549, *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (secured credit under Section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

33.     Courts have articulated a three-part test to determine whether a debtor is entitled to Section 364(c) financing:

(a)     The debtor is unable to obtain unsecured credit under Section 364(b) (i.e., by allowing a lender only an administrative claim);

(b)     The credit transaction is necessary to preserve the assets of the estate; and

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 15**

4849-0976-7976.1.

(c)    The terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor and the proposed lender.

*See Crouse Group*, 71 B.R. at 549. Additionally, courts will generally accord significant weight to the necessity of the debtor obtaining post-petition financing in order to remain viable. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

34.    As noted above, the need for the Debtor to obtain financing is critical. Further, the evidence at the interim hearing, if necessary, will show that a working capital facility of the type needed in this Chapter 11 case could not have been obtained on an unsecured basis.

**B.    The Debtor Does Not Have an Alternative to the DIP Loan, the DIP Financing Documents, and the Interim Order.**

35.    If necessary, the evidence at the interim hearing will show that a working capital facility of the type needed in this case could not have been obtained on an unsecured basis. Indeed, the potential sources of a credit facility for the Debtor, obtainable on an expedited basis and on reasonable terms, are practically nonexistent. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co.*, 789 F.2d at 1088.

36.    A debtor needs only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c). *Id.*; *In re Plabell*, 137 B.R. at 900. Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom*, *Anchor Sav. Bank FSB v. Sky Valley*, 99 B.R. 1997, 120 n.4 (N.D. Ga. 1989).  Thus, the evidence

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 16**

4849-0976-7976.1.

introduced at the interim hearing will satisfy the requirement of Section 364(c) that unsecured credit was unavailable to the Debtor.

37.     Because of the Debtor's acute liquidity crisis, the status of the Debtor's operations and collateral base, the need to maintain confidentiality, and the impracticability of pursuing (and paying for) numerous prospective lenders, the Debtor has concluded that, in its business judgment, it was not practicable to try to "shop" the DIP Loan to every possible lender. However, only the Post-Petition Lender, which, as the Debtor's landlord, is already intimately familiar with the Debtor's business operations, corporate structure, financing arrangements, and collateral base, and has already performed the necessary due diligence in connection with the DIP Agreement, was able to offer a post-petition credit facility to meet the Debtor's working capital needs on the terms, and within the time frame, that the Debtor needed.

38.     In fact, when presented with a term sheet for this DIP Loan, TCB declined to extend any debtor-in-possession financing to the Debtor on any terms.

### C.      Application of the Business Judgment Standard.

39.     As described above, the Debtor's management has concluded that the DIP Loan, the DIP Financing Documents, and the Interim Order provide the only alternative available under the circumstances. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mit St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *Ames*, 115 B.R. at 38 (in examining requests by a debtor for interim financing, courts apply the same business judgment standard applicable to other business decisions); *In re Simasko Prod Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re*

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 17**

4849-0976-7976.1.

*Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

40.     In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.*, at 513-14 (footnotes omitted).

41.     The Debtor has exercised sound business judgment in determining that a post-petition credit facility is appropriate and have satisfied the legal prerequisites to borrow under the DIP Loan, the DIP Financing Documents, and the Interim Order. The terms of the DIP Loan are fair and reasonable and are in the best interests of the Debtor's estate, and the Trustee consents or otherwise agrees to the priming Post-Petition Liens to be granted to the Post-Petition Lender pursuant to the Interim Order and the DIP Agreement. Accordingly, the Debtor should be granted authority to borrow funds from the Post-Petition Lender on the secured, administrative super-priority basis described above, pursuant to Section 364 of the Bankruptcy Code, and take the other actions contemplated by the Interim Order as requested herein.

42.     The Debtor believes that it could not obtain financing from any other lender on terms more favorable than the DIP Loan offered by the Post-Petition Lender, and certainly not

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 18**

4849-0976-7976.1.

before all of the Debtor's limited cash resources were depleted by the search. The Debtor's management exercised its best business judgment in negotiating the DIP Loan, the DIP Financing Documents, and the Interim Order that is presently before the Court.

### D.      Request for Modification of the Automatic Stay.

43.      As set forth more fully in the proposed Interim Order, the proposed DIP Loan contemplates a modification of the automatic stay established pursuant to Section 362 of the Bankruptcy Code to permit the Post-Petition Lender to take certain actions required or permitted by the Interim Order. More specifically, the Interim Order provides the Post-Petition Lender with relief from the automatic stay to allow the Post-Petition Lender, inter alia, to enforce certain remedies against the Collateral, without having to obtain any further order of the Bankruptcy Court. The Debtor submits that stay modification provisions of this sort are ordinary and usual features of post-petition debtor-in-possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the Interim and Final Orders.

### E.      Good Faith.

44.      Section 364(e) was designed to "encourage the extension of credit to Debtor" by allowing lenders to "rely on a bankruptcy court's authorization of the transaction." *In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982) (the purpose of Section 364(e) is "to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 19**

4849-0976-7976.1.

the bankruptcy judge."). *See also In re North Atlantic Millwork Corp.*, 155 B.R. 271, 279 (Bankr. D. Mass. 1993) ("The purpose of section 364(e) is to allow good-faith lenders to rely upon conditions at the time they extend credit and to encourage lenders to lend to bankrupt entities.").

45.     The DIP Loan is and will be the result of good faith and arm's-length negotiations, with all parties represented by counsel. The Debtor believes that the terms of the DIP Loan are fair and reasonable under the circumstances, and that Post-Petition Lender is entitled to the benefits of Section 364(e) of the Bankruptcy Code.

## F.     Interim Approval of the DIP Loan.

46.     Bankruptcy Rules 4001(c)(2) provide that a final hearing on a motion to obtain credit pursuant to Section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

47.     Pursuant to Bankruptcy Rules 4001(c) and (d), the Debtor requests that the Court conduct an expedited interim hearing on the date hereof or as soon as practicable to consider entry of the Interim Order authorizing the Debtor's to borrow an amount sufficient to fund its operating expenses pending a final hearing on the DIP Financing.

48.     The Debtor also respectfully requests that the Court schedule the final hearing on this Motion in sufficient time for the Debtor to obtain a final order approving the DIP Loan no later than thirty days from the Interim Order.  The DIP Agreement provides that if such final

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 20**

4849-0976-7976.1.

order is not entered by the thirty-first day after the Interim Order is entered, the DIP Agreement

will be in default.   Such relief is necessary in order to maintain ongoing operations and avoid

immediate and irreparable harm and prejudice to the Debtor's estate.

49.    No prior request for the relief sought herein has been made to this or any other

Court.

## VI.
## REQUEST FOR FINAL HEARING

50.    Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests the Court to set a

date for the Final Hearing.

WHEREFORE, the Debtor respectfully requests (a) entry of an order substantially in the

form of the proposed Interim Order attached hereto as Exhibit A, (b) after a final hearing on the

relief requested herein, entry of a Final Order approving the DIP Financing, substantially in the

form that shall be filed with the Court; and (c) such other and further relief as is just.

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 21**

4849-0976-7976.1.

Dated:  September 22, 2015.

Respectfully submitted,

*/s/ William L. Medford*
William L. Medford, Esq.
State Bar No. 00797060
Vickie L. Driver, Esq.
State Bar No. 24026886
Lewis Brisbois Bisgaard & Smith, LLP
2100 Ross Avenue, Suite 2000
Dallas, Texas 75201
Phone: (214) 722-7100
Fax: (214) 722-7111
Email:  william.medford@lewisbrisbois.com
Email:  vickie.driver@lewisbrisbois.com


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon the parties listed on the attached service list via facsimile or electronic mail, where available and otherwise via overnight delivery, on this 22nd day of September, 2015.


*/s/ William L. Medford*
William L. Medford


**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE
EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING
AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING - PAGE 22**

4849-0976-7976.1.