
11/20/2015

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **FOREST PARK MEDICAL CENTER** | § | CASE NO. 15-41684-BTR |
| **AT FRISCO, LLC** | § | (Complex Chapter 11) |
| | § | |
| Debtor. | § | |

## ORDER APPROVING (1) BIDDING PROCEDURES IN ADVANCE OF AUCTION, (2) APPROVING FORM AND MANNER OF NOTICE OF PROPOSED CURE AMOUNTS, (3) AUCTION (4) STALKING HORSE HEARING AND FINAL HEARING AND (5) GRANTING RELATED RELIEF [DOCKET NO. 260]

Upon the motion (the "**Motion**") filed by Forest Park Medical Center at Frisco, LLC ("**Debtor in Possession**" or the "**Debtor**"), requesting an entry of an order pursuant to 105, 363(b), (f) and (m) and 365 of the Bankruptcy Code[1] on an expedited basis (1) approving Bidding Procedures related to the sale of the Debtor's Assets; (2) approving the form, extent and manner of notice of the proposed Cure Amounts, Auction, Stalking Horse Hearing and Final Hearing (each as defined below); (3) authorizing the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to Sections 363 and 365 of the Bankruptcy Code; and (4) granting related relief; the Court, having reviewed the Motion and the objections thereto and having heard the statements of counsel and considered the evidence presented at a hearing before the Court on the Motion,

THE COURT FINDS AND CONCLUDES AS FOLLOWS:

A. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

B. Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C. The Debtor filed the Motion on November 14, 2015, proposing to sell the Assets to a potential buyer(s), and requesting approval of the Bidding Procedures related to the proposed Transaction (the "**Procedures Order**").

D. The statutory and legal predicates for the relief sought in the Motion are Sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

4837-7477-3547.1

**BIDDING PROCEDURES ORDER - PAGE 1**

E.  The Debtor has articulated good and sufficient reasons for approving the Bidding Procedures and the Bid Protections and the form and manner of notice of the proposed Cure Amounts, Auction, stalking horse hearing ("**Stalking Horse Hearing**") and the final hearing thereon (the "**Final Hearing**").

F.  The Bidding Procedures are reasonable and appropriate, and represent the best method for maximizing the return for the Assets. The relief granted herein is in the best interests of the Debtor, its estates, creditors, and other parties-in-interest.

THEREFORE, IT IS HEREBY ORDERED THAT:

1.  The Debtor, at its discretion, with the consent of Sabra, and in consultation with the Committee, may designate one or more Stalking Horse Bidder(s). Should the Debtor designates one or more Stalking Horse Bidder(s), no later than **January 22, 2016**, the Debtor shall file and service a notice (the "**Stalking Horse Notice**") that includes (i) the identify of each proposed Stalking Horse Bidder, (ii) a summary of the key terms of each Stalking Horse Agreement, (iii) a summary of the type and amount of bid protections ("**Bid Protections**"), if any. The Stalking Horse Notice shall be served on all parties that have expressed an interest in acquiring Assets subject to the proposed sale contemplated by each of the Stalking Horse Agreements, as well as all parties who have requested notice in the Debtor's Chapter 11 Case pursuant to Bankruptcy Rule 2002.

2.  The Stalking Horse Hearing will be set at a later date, if necessary.

3.  The Final Hearing on the Motion is set for **February 9, 2016, at 10:00 a.m. (CDT)**, before the United States Bankruptcy Court for the Eastern District of Texas, at which time the Court shall consider the Motion, confirm the results of the Auction, if any, and consider approval of the Transaction.

4.  Objections to approval of the sale to the highest and best bidder must be filed and served such that they are received by Debtor's counsel no later than **4:00 p.m. (CDT) on February 5, 2016** (the "**Sale Objection Deadline**").

5.  The failure of any objecting person or entity to file and serve its objection to the Bid Protections, the Motion, the Transaction, or the Debtor's consummation and performance of the APA, including the assumption and assignment of certain executory contracts, on or before the Stalking Horse Objection Deadline or the Motion Objection Deadline, as the case may be, shall be a bar to the assertion, at the Final Hearing or thereafter, of any objection to the Bid Protections, the Motion, the Auction, the Transaction, or the Debtor's consummation and performance of the APA, including the assumption and assignment of certain executory contracts, if authorized by the Court.

6.  The Debtor is authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements of this Procedures Order, subject to the restrictions on the use of cash collateral and orders of this Court with respect to same.

7. The Debtor is hereby authorized to shorten the timeline approved herein. Should the Debtor, in the exercise of its business judgment, and with the consent of Sabra, believes shortening the sale timeline would better maximize the value of the Assets, the Debtor may do so by filing a Notice with this Court (the "**Notice to Shorten Timeline**") and serve such Notice to Shorten Timeline on (a) the Office of the United States Trustee for the Eastern District of Texas, (b) all entities known to have expressed a *bona fide* interest in acquiring a material portion of the Assets within the last six months, (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a known interest in the relief requested by the Motion, (d) all secured creditors of the Debtor, (e) the Texas Attorney General's office; (f) the Texas Department of Health Services; (g) counsel for any committee(s) formed pursuant to Section 1102 of the Bankruptcy Code (if any hereafter is formed); (h) all other entities identified on the Debtor's Master Service List. Parties shall have the right to file objections to the Notice to Shorten Time.

8. Notice of the Procedures Order, Auction, Stalking Horse Hearing, Final Hearing, and the potential assumption and assignment of Assigned Contracts (as defined in the Motion) to the Successful Bidder pursuant to the APA shall be good and sufficient, and no other or further notice shall be required, if given as follows:

   (a) <u>Notice of Auction and Final Hearing</u>. As soon as practicable after the Court's entry of this Procedures Order, the Debtor (or its agents) shall:

   (A) serve a copy of this Procedures Order by first-class United States mail, postage pre-paid, upon (i) the Office of the United States Trustee; (ii) all entities known to have expressed a *bona fide* interest in acquiring a material portion of the Assets within the last six months; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a known interest in the relief requested by the Motion; (iv) all secured creditors of the Debtor; (v) the Texas Attorney General's office; (vi) the Texas Department of Health Services; (vii) counsel for any committee(s) formed pursuant to Section 1102 of the Bankruptcy Code (if any hereafter is formed); (viii) all entities identified on the Debtor's Master Service List;

   (B) serve a Notice of Proposed Sale, substantially in the form attached to the Motion as Exhibit C, by first class United States mail, postage pre-paid, upon those parties on the Debtor's Creditor Matrix who is not being served with a copy of the Procedures Order as set forth in (A) above; and

   (C) the Debtor shall not be required to serve the Procedures Order or the Notice of Proposed Sale to the patients on the Patient Matrix that was filed with the Court under seal.

   (b) <u>Cure Notice</u>. On or before January 27, 2016, the Debtor shall serve by first-class United States Mail, postage pre-paid, on all non-debtor parties to contracts and

leases that may become Assigned Contracts a copy, substantially in the form that was attached to the Motion as Exhibit A and which form is hereby approved, of the Cure Notice of (i) the Debtor's potential intent to assume and assign that party's Assigned Contract, and (ii) the proposed cure amount (the "**Cure Amount**") that the Debtor proposes as necessary to assume the Assigned Contract. Each non-debtor party to the Assigned Contract shall have until **February 2, 2016 at 4:00 p.m.** to object to the assumption and assignment of the Assigned Contract or the Cure Amount and, if objecting to the Cure Amount, must state in its objection with specificity what Cure Amount the non-debtor party believes is required (with appropriate documentation in support thereof). If no objection is timely received, the Assigned Contract may be assumed and assigned to the Successful Bidder on the closing date of the Transaction, and the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and the non-debtor party to the Assigned Contract shall be forever barred from asserting any other claims against the Debtor, the Successful Bidder, or its property that arise out of or relate to the Assigned Contract, the Assets, or the Transaction.

(c)  Cure Notice as to CIGNA.

(i)  Notwithstanding anything to the contrary herein, to the extent the CIGNA Agreement[2] is to be assumed and assigned, the proposed assignee shall provide all necessary information to CIGNA to enable it to vet the proposed assignee as an approved provider under the Agreement, and CIGNA shall have ten (10) days following the date such information is provided to object to assumption and assignment of its Agreement.

(ii)  To the extent the CIGNA Agreement is to be rejected, such rejection shall not be effective until the ninetieth (90th) day following the date notice of rejection is provided to CIGNA.

9.  Any final agreement purporting to memorialize an agreement for the disposition of substantially all of the Debtor's Assets by and between the Debtor and the Successful Bidder, shall be substantially in the form of the APA, which will be on file by **January 22, 2016**.

10.  The Debtor is authorized to reject any bid or offer that the Debtor or Sabra conclude, in consultation with the Committee is not in conformity with the terms and conditions of the APA. Any creditor seeking to obtain copies of an APA or letter of intent must provide a written request to counsel for the Debtor and execute a confidentiality agreement which will be provided by Debtor's counsel upon receipt of such request.

11.  The Court hereby approves the following bidding procedures (the "**Bidding Procedures**") which shall govern all proceedings relating to the APA and any subsequent bids for the Assets in this case:

---

[2] The "Cigna Agreement" is that certain Hospital Services Agreement, effective as of July 1, 2013, between Cigna Healthcare of Texas, Inc. and the Debtor.

(a) **Potential Bidder.** Parties interested in participating in the bidding process (each person other than the Buyer, a "**Potential Bidder**") will be required to deliver to the Debtor (to the extent not already delivered) the following:

(i) An executed confidentiality agreement in form and substance acceptable to the Debtor and Sabra (the "**NDA**"); and

(ii) The most current financial information evidencing the Potential Bidder's ability to close the transaction that meets with the Debtor's satisfaction, Sabra's satisfaction and in consultation with the Committee.

As promptly as practicable after a Potential Bidder delivers the above information, the Potential Bidder shall be eligible to commence due diligence with respect to the Assets. The Debtor, Sabra, and Houlihan, in consultation with the Committee, reserve the right to refuse any Potential Bidder access to the due diligence materials if such access is deemed to be harmful to the Debtor's estate. Each Potential Bidder is responsible for conducting its own due diligence regarding the terms under which Sabra may extend the term of the Lease.

(b) **Deadline for Submission of Bids.** The deadline for submitting any and all competing bids shall be on or before **January 27, 2016, at 5:00 p.m. (CST)** (the "**Bid Deadline**"). The Debtor, with the prior written consent of Sabra or upon obtaining authorization from the Bankruptcy Court, may extend the Bid Deadline once or successively, but is not obligated to do so; *provided, however,* that the cumulative length of any such extensions shall not be longer than seven days. The Debtor shall not be required to consider bids submitted after the Bid Deadline, but may do so in consultation with Sabra and the Committee (the "**Consultation Parties**").

(c) **Submission of Bids.** In order to qualify as a potential Qualified Bidder (as defined below) of the Assets, a Potential Bidder must timely submit:

(i) An executed asset purchase agreement in substantially the same form as the APA filed on January 22, 2016, with all modifications redlined which identifies ("**Modified APA**"):

(A) The Assets the Potential Bidder seeks to acquire;

(B) The executory contracts and unexpired leases such Potential Bidder seeks to assume and the proposed terms of cure; and

(C) States the total consideration to be paid by such Potential Bidder, including any amount of the purchase price attributable to payment of Cure Amounts.

(ii) A cash deposit in the amount representing 10% of the proposed purchase price (the **Deposit**") which amount shall be applied to the purchase price

at Closing or returned to the Potential Bidder in the event such bidder is not the Successful Bidder or the Back-Up Bidder. If the Successful Bidder fails to close, the Deposit shall be forfeited to the Debtor as liquidated damages in addition to other additional remedies available to the Debtor under applicable law.

(iii)   A Modified APA shall not contain:

(A)   A request for any type of break-up fee, expense reimbursement, or similar type of payment; or

(B)   Any due diligence, financing contingencies, or other contingency of any kind.

(iv)   Evidence of authorization and approval from such Potential Bidder's board of directors (or comparable authorization, as the case may be) with the respect to the submission, execution, delivery, and closing of the APA or the Modified APA, as the case may be.

(v)   Information regarding such Potential Bidder's financial capability to consummate the transactions contemplated by the APA or Modified APA, as the case may be, containing such financial and other information that will allow the Debtor and Sabra, in consultation with the Committee, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transactions contemplated by the APA or the Modified APA, as the case may be. If the Potential Bidder is an entity formed for the purpose of acquiring the assets then financial information of the equity holder(s) or such other form of financial disclosure acceptable to the Debtor and to Sabra (with a written commitment of such equity holder(s) to be responsible for the Potential Bidder's obligations in connection with the acquisition of the Assets).

(vi)   Discloses fully the terms of the proposed employment of any of Hospital's employees, management, or officers in connection with such bid.

(vii)   Is delivered to the following parties (except items under subsection (v) and (vi) above are only to be delivered to the Debtor, Debtor's counsel, Sabra and its counsel) such that they are received by the close of business on the Bid Deadline (the "**Notice Parties**"):

> Michael Miller
> 5500 Frisco Square Boulevard
> Frisco, Texas 75034
> Email: Michmiller@deloitte.com
> *Debtor's Chief Restructuring Officer*
>
> William Medford
> Lewis Brisbois Bisgaard & Smith LLP

2100 Ross Avenue
Suite 2000
Dallas, TX 75201
Email: William.Medford@lewisbrisbois.com
*Counsel for Debtor*

Harold Andrews
Sabra Health Care REIT, Inc.
18500 Von Karman Avenue
Suite 550
Irvine, CA 92612
Email: handrews@sabrahealth.com

Deirdre B. Ruckman
Gardere Wynne Sewell
1601 Elm Street, Suite 3000
Dallas, TX 75201
Email: druckman@gardere.com
*Counsel for Sabra*

George P. Angelich
Arent Fox LLP
1675 Broadway
New York, New York 10019
Email: george.angelich@arentfox.com
*Committee Counsel*

Adam Dunayer
Houlihan Lokey
100 Crescent Court, Ste. 900
Dallas, TX 75201
Email: ADunayer@hl.com

(d)     **Qualification of Bid**. After confirming satisfaction of the foregoing conditions, the Debtor shall give such Potential Bidder notice that it is a "**Qualified Bidder**" and its bid is a "**Qualified Bid**."

(e)     **Auction**. In the event that one or more competitive Qualified Bids other than that of the Stalking Horse Bidder are received, the Debtor will conduct an auction to determine the highest or best bid for the Assets beginning at **10:00 a.m. (CST) on February 2, 2016**, at the offices of Lewis Brisbois Bisgaard & Smith LLP, 2100 Ross Avenue, Suite 2000, Dallas, Texas 57201 (the "**Auction**"). The Auction may be adjourned by announcement of the Debtor to those parties who appear at the Auction and may be reconvened by giving notice to those parties who appeared. Each Qualified Bid other than the opening bid is referred to as a "**Subsequent Bid**."

At the conclusion of the Auction, or as soon thereafter as practicable, the Debtor and Sabra, in consultation with the Committee, shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the process, including those factors affecting the speed and certainty of consummating the Transaction; (ii) identify the highest or otherwise best offer(s) for the Assets received at the Auction (the "**Successful Bid**", and the bidder(s) making such bid, the "**Successful Bidder**"); and (iii) designate back-up bid(s) to the Successful Bid (the "**Back-Up Bid**" and "**Back-Up Bidder**"). If Sabra and the Debtor cannot reach an agreement on the Successful Bid and Back-up Bidder(s), the Debtor shall make the selection and present it the to the Bankruptcy Court for approval. Sabra and the Committee reserve the right to object.

(f)     **Auction Procedures**. In the event an Auction is necessary, such Auction will be conducted as follows:

(i)     Only representatives of the Debtor, Houlihan, the Stalking Horse Bidder (if any), Sabra in its capacity as DIP Lender, landlord and owner of the Hospital Real Estate, any representative of the Committee, and the Office of the U.S. Trustee, and representative of any Qualified Bidder who has timely submitted a Qualified Bid (and the legal and financial advisers to each of the foregoing) may attend the Auction, and only the Stalking Horse Bidder (if any), Buyer and the other Qualified Bidders may make any subsequent Qualified Bids at the Auction. Any party in interest may request to attend the Auction by making such request to Debtor's counsel. If the Debtor does not grant such request, the party in interest may make such request to the Bankruptcy Court.

(ii)    At least one (1) business day prior to the Auction, each Qualified Bidder who has submitted timely a Qualified Bid must inform the Debtor whether it intends to participate in the Auction. Failure to comply with this provision may preclude an otherwise Qualified Bidder from attending and/or participating in the Auction. As soon as is practicable before the Auction, the Debtor must provide copies of the Qualified Bid, that the Debtor and Sabra, in consultation with the Committee, believe is the highest or otherwise best offer to all Qualified Bidders who are eligible to attend and participate in the Auction.

(iii)   Each Deposit submitted pursuant to the Bidding Procedures will be held in escrow by Debtor and will not become property of the Debtor's estate absent further order of the Bankruptcy Court. Any interest earned on any Deposit shall be remitted to the appropriate Qualified Bidder if the Deposit is returned to such Qualified Bidder. Within five business days after the entry of one or more orders of the Bankruptcy Court approving other Qualified Bidders as the Successful Bidder(s), the Debtor shall return the Deposits made by any Qualified Bidders other than the Successful Bidder(s).

(iv)    All Qualified Bidders who have submitted a Qualified Bid shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all

material terms of each Subsequent Bids (including any Subsequent Bid by Buyer) will be fully disclosed to all other bidders throughout the entire Auction.

(v) All Qualified Bidders attending the Auction shall agree to remain ready, willing, and able to close the Transaction under the terms of their last Qualified Bid submitted at such Auction until the earlier of (1) the close of the Transaction, or (2) February 24, 2016, and such Qualified Bidder(s) shall close if the Successful Bidder fails to close, if, as, and when determined by the Debtor to be the new Successful Bidder.

(vi) The Debtor and/or Sabra, in consultation with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances *(e.g.,* the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order entered in connection herewith.

(vii) Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid. The bidding shall be in minimum increments of at least $50,000 higher than the previous bid or bids (after giving effect to the minimum required for each bid to be determined to be a Qualified Bid). The Auction shall also continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids. All Qualified Bidders shall have the right to submit additional bids and make modifications to their respective APA at the Auction to improve such bids.

(viii) The DIP Lender will be entitled to credit bid.

(ix) The Debtor shall provide for a court reporter to be present and prepare a transcript of the Auction. The Debtor or Sabra may determine to make all or any part of the transcript subject to confidentiality requirements and seal.

(x) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed sale.

(xi) Within 24 hours of the conclusion of the Auction, the Debtor will file notices of the Successful Bid(s).

(g) **Final Hearing**. The Court has scheduled a hearing to approve the Transaction (the "**Final Hearing**") on **February 9, 2016, at 10:00 a.m.** (CST). All objections to the Transaction shall be filed with the Bankruptcy Court and served on the Notice Parties at least two (2) days prior to the Final Hearing. The Successful Bidder and the Back-Up Bidder must produce a competent witness at the Final Hearing (and any subsequent hearing) to provide testimony, if necessary, to establish adequate assurance of

future performance by each such bidder under the unexpired leases and executory contracts to be assigned to such bidder, to the extent required by Sections 365(b) of the Bankruptcy Code. At the Final Hearing, the Debtor will request that the Court approve the Transaction with regard to the Back-Up Bidder in the event the contemplated Transaction with the Successful Bidder does not timely close; in which case such Back-Up Bidder shall become the Successful Bidder without further order of the Court. The Successful Bidder shall be substituted for the Buyer under the APA (as amended to reflect terms of the Successful Bid) and the proposed Order.

(h)     **Closing**. Closing shall take place within fourteen (14) days after the entry of the order approving the Transaction (the "**Sale Order**"), but in no event later than February 24, 2016, and shall be only upon the Sale Order becoming a final order, except upon the waiver of this prerequisite (of a final order) by the Successful Bidder.

12.    The Debtor reserves the right with the consent of Sabra, in consultation with its professionals and the Committee, to alter these Bidding Procedures, and to establish procedures and rules during the Auction, as they may determine reasonably appropriate to maximize the value realized by the Debtor's estate, subject to the ultimate approval of its determinations by the Court.

13.    To facilitate these procedures, Sabra may consult independently with Potential Bidders, Qualified Bidders, or other persons potentially interested in acquiring some or all of the Assets.

14.    The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Procedures Order.

15.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, the terms and conditions of this Procedures Order shall be immediately effective and enforceable upon its entry.

Signed on 11/20/2015

*Brenda T. Rhoades*     SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

PREPARED BY:

/s/ *William L. Medford*
William L. Medford, Esq.
State Bar No. 00797060
Vickie L. Driver, Esq.
State Bar No. 24026886
Christina W. Stephenson, Esq.
State Bar No. 24049535
Lewis Brisbois Bisgaard & Smith, LLP
2100 Ross Avenue, Suite 2000
Dallas, Texas 75201
Phone: (214) 722-7100
Fax: (214) 722-7111
Email: william.medford@lewisbrisbois.com
Email: vickie.driver@lewisbrisbois.com
Email: christina.stephenson@lewisbrisbois.com

**COUNSEL FOR THE DEBTOR**